IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 19-636-13 |
| | : | |
| SHAHAAD STERLING | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                                                  **May 8, 2020**

      Defendant Shahaad Sterling, who is currently detained pending trial on several drug charges, moves for bail in light of the ongoing novel coronavirus 2019 (COVID-19) pandemic. On November 1, 2019, United States Magistrate Judge David R. Strawbridge granted the Government's pretrial detention motion and Sterling has been detained since. Sterling now asks this Court to review Judge Strawbridge's decision arguing his detention is not necessary to assure his appearance for trial or the safety of the community. He also argues his pretrial detention during the COVID-19 pandemic violates his due process rights. Because Sterling has failed to rebut the presumption of his pretrial detention and because the existence of COVID-19 alone does not warrant his release, the Court will deny his motion.

**BACKGROUND**

      Sterling is charged with five counts related to his alleged participation in a large drug trafficking group which conspired to distribute crack-cocaine and other drugs in Chester, Pennsylvania.[1] After his arrest on October 30, 2019, the Government moved for pretrial detention.

---

[1] Sterling is charged with: Count 1 – conspiracy to distribute crack cocaine, fentanyl, and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C); Counts 8 and 27 – distribution and possession with intent to distribute controlled substances and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; and Counts 25 and 30 – distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

On November 1, 2019, Judge Strawbridge held a hearing and granted the Government's motion. Sterling has been detained since at the Federal Detention Center in Philadelphia, Pennsylvania (FDC Philadelphia). Sterling is one of thirteen Defendants in a complex case involving 68 Counts arising out of the alleged drug trafficking conspiracy. He and his codefendants are scheduled for trial beginning November 9, 2020.

Much has changed since Sterling's arrest and detention order. Due to COVID-19, a novel and highly contagious respiratory virus, Pennsylvania (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Watch for symptoms*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 8, 2020). Some populations, including the elderly and immunocompromised, are at a higher risk of developing more serious complications upon exposure to the virus. *See id.* As of May 8, 2020, the virus has infected nearly 1,219,066 people in the United States and resulted in 73,297 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 7, 2020). In Pennsylvania, there are 54,238 confirmed cases and 3,616 reported deaths. *See COVID-19 Data for Pennsylvania*, Pa. Dep't of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last updated May 8, 2020, 12:00 PM).

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In Pennsylvania, like in many other states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed for the rest of the academic year, and people are avoiding gatherings of any kind. In this district, the Court has taken significant steps to limit operations to prevent the spread of the virus.

In light of the precautions necessary to prevent the virus's spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Mar. 23, 2020). Nevertheless, in response to the COVID-19 pandemic, the Bureau of Prisons[2] (BOP) has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 8, 2020). Although COVID-19 appears to be spreading in the community, as of May 8, 2020, there are no positive

---

[2] The Bureau of Prisons operates FDC Philadelphia.

cases of COVID-19 among inmates at FDC Philadelphia.[3] Further, no inmate has presented any known symptoms of COVID-19 nor has any inmate required testing.

On April 30, 2020, however, the Warden of FDC Philadelphia reported one staff member has tested positive for COVID-19. The staff member has not been in the institution since April 12, 2020; however, FDC Philadelphia did not receive confirmation of the positive test until late April 29, 2020. On May 1, and May 5, 2020, a second and third staff member tested positive for COVID-19. *See* Letter Update, May 5, 2020, ECF No. 41, *Brown v. Marler*, No. 20-1914 (E.D. Pa. filed Apr. 15, 2020). According to reports, FDC Philadelphia is following and implementing all best practices and guidelines for sanitation and prevention of spreading the virus. There have been no other reported cases of COVID-19 in the institution.

On April 10, 2020, Sterling filed the instant motion for bail and asks this Court to review Judge Strawbridge's decision and grant him pretrial release. Sterling first argues he is neither a danger to the community nor a flight risk under the Bail Reform Act. He also argues his pretrial detention violates his due process rights and fails to serve any compelling government interest in light of the ongoing COVID-19 pandemic. Considering the changed circumstances created by COVID-19 since his pretrial detention hearing, Sterling argues pretrial detention is not necessary to assure his appearance at trial and the safety of the community. The Government opposes the motion.

The Court held a telephonic hearing on April 27, 2020. At the hearing, Sterling consented to proceed with the hearing on his motion by telephone conference and waived his right to an in-

---

[3] The parties have been advised that the Court receives reports from the Warden and attorney of FDC Philadelphia regarding whether there are any confirmed cases of COVID-19 and whether any inmates present any symptoms. Further, the parties have stipulated to the status of FDC Philadelphia based on the public record. *See* Def.'s Request, May 6, 2020, ECF No. 179.

person hearing.  *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 15002(b)(1)(A), (b)(4), 134 Stat. 281, 528–29 (2020). In support of his release, Sterling presented evidence that was not presented at the November 1, 2019, hearing before Judge Strawbridge. His proffered evidence included his high school diploma, his lack of prior criminal history, work history, and letters of support from family and community members. The Government responded with evidence of Sterling's persistent use of firearms and numerous drug transactions on behalf of the drug trafficking group.

**DISCUSSION**

The Court will deny Sterling's motion because he has failed to rebut the presumption that his pretrial detention is appropriate and because the mere existence of COVID-19 does not warrant his release. Because Judge Strawbridge has already determined Sterling shall be detained pending trial, Sterling's motion is essentially an appeal from that determination in light of new circumstances. Pursuant to 18 U.S.C. § 3145(b), a district court may review a magistrate judge's pretrial detention. The court's review is de novo. *See United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985). Pursuant to 18 U.S.C. § 3142(f), a court may reopen a hearing on pretrial detention if "information exists that was not known to the [defendant] at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure" the defendant's appearance and the safety of the community.

Initially, despite the COVID-19 pandemic, there is still a presumption that Sterling is a danger to the community and a flight risk, and his pretrial detention is still proper pursuant to the Bail Reform Act. Under that statute, a court may detain a defendant pending trial only if, after a hearing, the court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community." 18

U.S.C. § 3142(e)(1). There is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the court finds there is probable cause to believe the defendant committed an offense under the Controlled Substances Act punishable by ten or more years of imprisonment. *Id.* § 3142(e)(3)(A). An indictment charging the defendant with such an offense is "sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

The indictment in this case triggers the rebuttable presumption of pretrial detention. The indictment charges Sterling with several counts under the Controlled Substances Act which bear the requisite penalty. In Count 1, Sterling is charged with conspiracy to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 846. For a person with no prior felony drug convictions, this offense carries a statutory maximum sentence of 20 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). In the remaining four counts, Sterling is charged with distribution of, or possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Each of these counts carries a statutory maximum sentence of 20 years' imprisonment. The indictment thus provides probable cause which triggers the rebuttable presumption of dangerousness and risk of flight warranting Sterling's pretrial detention.

With the rebuttable presumption triggered, the burden shifts to Sterling to produce evidence of lack of dangerousness and risk of flight. *See Suppa*, 799 F.2d at 119. To overcome the rebuttable presumption, a defendant "must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). In determining whether a defendant has rebutted the presumption for pretrial detention, a court must "take into account the available information concerning" the

6

nature and circumstances as to the offenses charged, the weight of the evidence against the defendant, the defendant's history and characteristics, including whether he was on probation or pretrial release at the time of the offenses, and the nature of any danger he might pose. 18 U.S.C. § 3142(g).

The Court finds there are no conditions or combination of conditions of release that can reasonably assure Sterling's appearance at trial or the safety of the community. First, Sterling's proffered evidence does not rebut the presumption of dangerousness and risk of flight. Although the Court finds it commendable that Sterling has earned his high school diploma and held a job working for U-Haul of Pennsylvania, this has little bearing on his dangerousness or flight risk. Sterling graduated high school in 2016, before the alleged criminal activity in this case began. Sterling's employment evidence is merely a tax statement from his job at U-Haul for 2019. This does not suggest the job will be available to him upon his release or that he held the job steadily for several years.

Second, the relevant §3142(g) factors weigh in favor of pretrial detention. The charges against Sterling are serious and arise out of his alleged membership in a drug trafficking group whose members sold crack cocaine and other drugs in Chester over several months. Along with the alleged drug offenses, the drug trafficking group engaged in competition with another drug trafficking group often using guns. If Sterling is found guilty of his charges, he faces up to 20 years' imprisonment on each count.

As for the strength of the evidence in this case, the Government contends it has videos showing Sterling engaged in drug transactions, sold drugs to confidential informants, and spent time with the leaders of the drug trafficking group. The Government also has a photo showing Sterling with other group members, holding wads of cash (which the Government contends is drug

7

transaction proceeds), with a firearm visibly tucked into his belt. *See* Gov't's Ex. 1, Nov. 4, 2019, ECF No. 58. Upon Sterling's arrest, law enforcement discovered a crack cocaine processing station in Sterling's home. While the Government relies largely on circumstantial evidence, it all tends to tie Sterling to the use of guns and sale of drugs. Although Sterling likely disagrees with the weight of the Government's evidence, he does not suggest the Government's case is weak in his motion.

Turning to Sterling's history and characteristics, he has no prior convictions and has submitted two letters in support of his character as an upstanding young man. While this evidence suggests Sterling is not dangerous, it does not outweigh the Government's evidence that Sterling regularly carried and used guns. The circumstances surrounding Sterling's arrest show Sterling owns multiple guns and considered engaging in an armed encounter with the officers who arrested him. For example, after arresting Sterling, law enforcement recovered an assault style handgun, fully loaded and with the safety off, propped up inside Sterling's front door. Later, law enforcement conducted a search of Sterling's residence and found other evidence of gun use including additional ammunition and a loaded .40 caliber pistol magazine. This evidence creates the reasonable inference that Sterling has a history of engaging in dangerous conduct using guns.

Finally, Sterling would pose a significant danger to the community upon his release. The Government has represented that it holds evidence of Sterling's participation in several drug transactions on behalf of a well-established drug trafficking group and in furtherance of a long-running drug trafficking conspiracy. Sterling notes there is no evidence that he was a leader of the group, received profits from the group's conduct, unlawfully owned his weapons, or used them in any illegal fashion. Nevertheless, based on the evidence the Government has presented thus far, there is a reasonable inference that Sterling engaged in street level drug transactions on behalf of

the drug trafficking group and carried weapons while doing so. As a result, the Court finds Sterling would pose a significant danger to the community upon his release.

In sum, although Sterling has presented some evidence to show his lack of dangerousness and flight risk, it is insufficient to rebut the presumption that he should be detained pending trial. *See United States v. Santiago-Pagan*, No. 08-424-1, 2009 WL 1106814, at *5 (M.D. Pa. Apr. 23, 2009) (concluding defendant did not rebut presumption of dangerousness because proffered evidence did not relate to "defendant's moral integrity, respect for the law, or personal reliability"); *cf. id.* at *8 (noting "flight to avoid prosecution is particularly high among those charged with major drug offenses" and finding § 3142(g) factors weighed in favor of finding defendant a flight risk). Even though this evidence was not presented to Judge Strawbridge at Sterling's original detention hearing, it does not result in a different conclusion now. Sterling's detention is proper pursuant to the Bail Reform Act because the Court finds he has failed to rebut the presumption "that no condition or combination of conditions will reasonably assure the appearance of [Sterling] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

Next, the Court does not find there are any changed circumstances, including the existence of COVID-19, that warrant Sterling's release. Certainly, the presence of, and exigent circumstances surrounding, COVID-19 has increased substantially over the last six weeks and was not known to Sterling at the time of his detention hearing. Nevertheless, the existence of COVID-19 alone does not entitle him to pretrial release and bears no weight on his dangerousness or flight risk. *See United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused."); *cf. United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release, even considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Not only is the existence of COVID-19 insufficient on its own to warrant Sterling's release, Sterling points to no other reason to conclude he is at an increased risk of developing severe symptoms from the virus or that his release will reduce that risk. Sterling is 21 years old and presumably in good health, as he has presented no evidence of underlying health conditions or risk factors. Sterling is currently detained at FDC Philadelphia, which, to date, has reported no cases of COVID-19 amongst inmates. The BOP has continually monitored and implemented measures in response to COVID-19 to protect inmates, staff, visitors, and members of the public. Further, Sterling has not provided a plan for home confinement that will reduce his risk of contracting the virus. As a result, Sterling's generalized concerns regarding COVID-19 do not warrant his release under § 3142(f). *See United States v. Graham*, No. 19-185, 2020 WL 1685912, at *5 (D. Minn. Apr. 7, 2020) (denying motion for bail under § 3142(f) because existence of COVID-19 has no bearing on the defendant's flight risk or dangerousness to the community).

The Court also concludes Sterling's pretrial detention does not violate his due process rights because it is reasonably related to the Government's interest in assuring his appearance at trial and the safety of the community. Pretrial detainees have the right to due process under the Fifth Amendment, which provides they are to be free from conditions of confinement that amount to punishment prior to an adjudication of guilt. *See Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (stating pretrial detainees rights are found in the Due Process Clause of the Fifth Amendment); *Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005) (stating appropriate standard is "whether the conditions of confinement . . . amount[ ] to punishment prior to an adjudication of guilt"). Pretrial detention consistent with the Bail Reform Act, however, is not

punishment when it is used to secure the defendant's presence at trial and the safety of the community. *See United States v. Salerno*, 481 U.S. 739, 748–49 (1987). As discussed, Sterling's detention meets these requirements.

Further, the Court finds the existence of COVID-19 does not transform Sterling's pretrial detention into punishment prior to an adjudication of guilt. Pretrial detention may amount to punishment if it is imposed arbitrarily or with the express intent to punish. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979). There is no evidence of such intent or arbitrary conduct here. Sterling was detained before the first case of COVID-19 was reported in Wuhan, China and long before its presence in the United States. Considering the BOP's response to prevent the spread of COVID-19 in its facilities, there is no evidence prison officials are keeping Sterling detained to punish him or for an arbitrary purpose. The Court will therefore deny Sterling's motion for bail under the Due Process Clause. *See United States v. Villegas*, No. 19-568, 2020 WL 1649520, at *2–3 (C.D. Cal. Apr. 3, 2020) (denying pretrial detainee's due process challenge to continued detention in light of COVID-19 because there was no evidence of intent to punish or arbitrary purpose).

**CONCLUSION**

In conclusion, Sterling's pretrial detention is proper pursuant to the Bail Reform Act. Sterling is subject to the rebuttable presumption that he is a danger to the community and a flight risk warranting pretrial detention. Because Sterling has failed to proffer sufficient evidence to overcome this presumption and because the relevant § 3142(g) factors weigh in favor of his detention, the Court finds there is no condition or combination of conditions of release that will reasonably assure the safety of the community or his appearance for trial were he to be released. Further, Sterling's generalized concerns regarding COVID-19 without any individualized risk factors does not constitute changed circumstances warranting his release under § 3142(f) or the

Due Process Clause. Accordingly, the Court will deny Sterling's motion without prejudice to reassert should circumstances created by COVID-19 change.

    An appropriate order follows.

                                BY THE COURT:

                                _/s/  Juan R. Sánchez_
                                Juan R. Sánchez, C.J.